**UNITED STATES DISTRICT COURT FOR MARYLAND**

_____

| | |
|---|---|
| MICHAEL PARROTTE<br>3220 Rhoderick Road<br>Frederick, MD 21701<br><br>   and<br><br>AGV SPORTS GROUP, INC.<br>3220 Rhoderick Road<br>Frederick, Maryland 21701<br><br>       Plaintiffs<br><br>vs.<br><br>LIONETTI ASSOCIATES, L.L.C d/b/a LORCO<br>PETROLEUM SERVICES and LORCO<br>450 South Front Street<br>Elizabeth, NJ 07202<br><br>   and<br><br>LORCO OF MARYLAND, LLC<br>171 Childs Road<br>Elkton, Maryland 21921<br><br>   Serve:<br>       Dwight E. Thomey, Esquire, Agent<br>       153 East Main Street<br>       Elkton, Maryland 21921<br><br>       Defendants | CIVIL NO. |

**CLASS ACTION COMPLAINT**

**INTRODUCTION**

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." 47

U.S.C. § 227, Congressional Statement of Findings #5. Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimile ("Junk Fax"). The Maryland TCPA, Annotated Code of Maryland, Commercial Law Article, §§14-3201, -3202, creates a separate and distinct cause of action ("In addition to any action . . . otherwise authorized by law") for the transmission of certain unsolicited advertisements via facsimile.

Plaintiffs, Michael Parrotte and AGV Sports Group, Inc., on behalf of themselves and all others similarly situated, sue Defendant Lionetti Associates, LLC doing business under the registered trade names, "Lorco Petroleum Services" and "Lorco," and Defendant Lorco of Maryland, LLC, for violation of the TCPA and the related Maryland statute.

## **THE PARTIES**

1. Plaintiff, Michael Parrotte, is an individual residing in Frederick County, Maryland.

2. Plaintiff AGV Sports Group, Inc. is a Maryland corporation maintaining its principal place of business in Frederick, Maryland.

3. Defendant Lionetti Associates, L.L.C. ("Lionetti") is a New Jersey limited liability company having its principal place of business in Elizabeth, New Jersey, and additional offices in Elkton, Maryland. Lionetti conducts business in Maryland under the trade names "Lorco Petroleum Services" and "Lorco," which are registered with the Maryland Department of Assessments and Taxation under "Lionetti Associates, LLC" as "Owner."

4. Defendant Lorco of Maryland, LLC is a Maryland limited liability company maintaining its offices in Elkton, Maryland, engaged in business in Maryland and in other states.

5. Defendants are referenced collectively below as "Lorco."

**JURISDICTION**

6. Federal question subject matter jurisdiction exists under 28 U.S.C. § 1331. See *Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

7. Venue is proper under 28 U.S.C. § 1391(b) and (c) because a substantial portion of the facts and circumstances that give rise to the cause of action occurred in Maryland.

**THE LEGAL BASIS OF THE CLAIMS**

8. This class action arises from Defendants' violation of federal and state statutes prohibiting privacy and property violations via invasive telemarketing practices.

9. The claims of Plaintiffs and the putative class arise under the Telephone Consumer Protection Act, 42 U.S.C. §227 ("TCPA"), and the Maryland TCPA (Annotated Code of Maryland, Commercial Law Article, §§14-3201, -3202), both of which create private causes of action for certain telemarketing practices.

10. The TCPA and the Maryland TCPA were enacted to protect the property rights of the recipients of unsolicited facsimile advertisements and to prohibit unreasonable invasions of privacy via certain telemarketing practices.

11. The TCPA prohibits the use of a facsimile machine to send unsolicited advertisements for goods and services. 42 U.S.C. §227(b)(1)(C).

12. The TCPA requires that even where the intended recipient has given prior consent, or where there is an established business relationship between the intended recipient and the sender, the advertisement must include language which clearly states the recipient's right to request that no additional fax advertisements be sent, and that the sender's failure to remove the recipient's facsimile number from the telemarketer's database within thirty days is itself a

violation of the TCPA. These requisites are referred to below as "Compliant Opt Out Notice."

See 42 U.S.C. §227(b)(2)(D).

      13.     The TCPA, 47 U.S.C. §227(b)(3) provides a private right of action, as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State, (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receiver $500 in damages for each violation, whichever is greater, or (C) both such actions.

      14.     The Maryland Telephone Consumer Protection Act (Annotated Code of Maryland, Commercial Law Article, §§14-3201, -3202) provides in relevant part as follows:

> § 14-3201. Violations of certain federal laws and regulations prohibited.
>
> A person may not violate:
>
> (1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 through 6108, as implemented by the Federal Trade Commission in the Telemarketing Sales Rule (16 C.F.R. Part 310); or
>
> (2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission in the Restrictions on Telemarketing and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).
>
> § 14-3202. Violations; remedies.
>
> (a) Violations.- A violation of this subtitle is an unfair or deceptive trade practice within the meaning of Title 13 of this article and is subject to the enforcement and penalty provisions contained in Title 13 of this article.
>
> (b) Remedies.- In addition to the remedies provided in § 13-408 of this article, an individual who is affected by a violation of this subtitle may bring an action against a person that violates this subtitle to recover:
>
>     (1) Reasonable attorney's fees; and
>
>     (2) Damages in the amount of the greater of:
>
>         (i) $500 for each violation; or
>
>         (ii) Actual damages sustained as a result of the violation.

(c)  Separate violations.- For purposes of this section, each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation.

"Title 13" referenced above, which is The Maryland Consumer Protection Act, provides at §13-408, in relevant part:

Action for damages.

(a)  Actions authorized. -  In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

(b)  Attorney's fees. -  Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

15. Plaintiffs and the Class Members are "persons" entitled to sue under 13-408(a) and (b).

16. The entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements. *Portuguese Am. Leadership Council of the U.S., Inc. v. Investors' Alert, Inc.*, 956 A.2d 671, 680-81 (D.D.C. 2008);  In the Matter of Rules and Regs. Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014 (2003); Memorandum Opinion and Order, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 95-310, CC Docket No. 92-90

17. A defendant who relies on an existing business relationship as justification for the transmission of an advertisement via facsimile has the burden of proving such an EBR.  21 F.C.C.R. 3787, 21 FCC Rcd.  3787, 38 Communications Reg. (P&F) 167, 2006 WL 901720

(F.C.C.),Report and Order and Third Order on Reconsideration, CG Docket No. 05-338, FCC 06-42, Adopted April 5, 2006.

18. The Federal Communications Commission has ruled, ". . . the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission."

19. Plaintiffs bring this action individually and as representatives of all members of a nationwide class, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## ALLEGATIONS OF FACT

20. On June 4, 2012, Defendants transmitted unsolicited facsimile advertisements to Plaintiffs and to thousands of other persons in Maryland and elsewhere throughout the United States. A copy of one advertisement sent to Plaintiffs on that date is attached as Exhibit A.

21. The advertisement in Exhibit A is of a type and style, including the one-page length without cover sheet, the fax header, and the removal notice, that is consistent with fax broadcasting to multiple recipients in an advertising "campaign."

22. The notice at the bottom of Exhibit A, which is not a Compliant Opt-Out Notice, states, "To be removed from our fax list, just call 888-260-5841."

23. The reference in Exhibit A to "our fax list" is an admission by Defendants that the advertisement was sent to multiple recipients whose facsimile numbers were included on a list of facsimile numbers used by Defendants for the dissemination of the advertisement.

24. The telephone number 888-260-5841is answered by Sound Advertising in Seattle, Washington, which provides advertising services in "campaigns."

25. The website of Sound Advertising (at http://www.soundadgroup.com/#apps , last viewed September 9, 2013) describes tools it uses to provide advertising services to its clients,

and includes the following statements: "If you've ever wondered what the leadgen pros are using, this is it. Leadmesh was developed to help lead aggregators, buyers and sellers of leads increase their profitability.  Ping Post logo.  Host and Post – buy and sell real-time leads. Plan your campaigns."

26. "Leadgen" means "lead generation," which is the process of identifying qualified prospective customers using the mass dissemination of advertisements that invite customers to respond, typically by telephone.

27. Defendants engaged in lead generation by the dissemination of Defendants' advertisements via fax broadcast.  Facsimile broadcasts in advertising campaigns are typically sent in batches on more than one day.  Exhibit A displays one of those advertisements, sent on one of the dates in one of Defendants' advertising campaigns.

28. On information and belief, Plaintiffs allege that Defendants and their agents, including their advertising service providers, caused the transmission of thousands of advertisements via facsimile to the Class Members on multiple dates during the period beginning four years prior to this suit, and continuing to the present.

29. On information and belief, Plaintiffs allege that Defendants and their agents, including their advertising service providers, have possession or control of copies of all of the ad copy images for the advertisements promoting Defendants' business that were disseminated to Plaintiffs and the class members, as well as the lists themselves, communications with the advertising service providers and others regarding the advertising campaigns, internal communications regarding the same, and the detailed outcome data that resulted from the transmissions.  It would be expected in the ordinary course of business that these records,

documents and data were created and have been preserved. Defendants are on notice to preserve these items, and to notify all of their service providers to do the same.

30. Data including the specific time, date, duration, target facsimile number, sending number, and content of each fax transmission is among the data created in connection with the fax advertising campaigns, and is exclusively in the possession or control of Defendants, their agents, their advertising service providers, and to some extent, their telephone carriers. Plaintiffs can further particularize their allegations as to this information after it is produced in discovery.

31. Neither Plaintiffs nor the Class Members gave express prior invitation or permission, or prior consent in any fashion, for the transmission of Defendants' advertisement to them via facsimile.

32. The advertisements did not contain a Compliant Opt Out Notice.

33. Defendants carelessly and recklessly failed to obtain prior consent from the persons to whom the faxes were sent; carelessly and recklessly failed to determine that the faxes were sent only to persons who had given such prior consent; and carelessly and recklessly failed to include a Compliant Opt-Out Notice in the content of the faxes.

34. Defendants carelessly and recklessly failed to confirm the existence of an existing business relationship the persons to whom the faxes were sent; carelessly and recklessly failed to determine that the faxes were sent only to persons with whom such a relationship existed.

35. The advertisements contained in the fax transmissions alleged above were created by Defendants. The advertisements and the fax transmissions that contained them were therefore products and completed operations of Defendants.

## CLASS ALLEGATIONS

36. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

37. On June 4, 2012, and on other dates during the four years prior to the filing of this action, Defendants transmitted unsolicited facsimile advertisements to class members.

38. Defendants have engaged in widespread advertising via unsolicited facsimile transmission in violation of the TCPA and the Maryland TCPA.

39. Exhibit A displays one of Defendants' advertisements sent to Plaintiffs and Class Members.

40. Defendants did not obtain the consent of Plaintiffs or the putative class members prior to the transmission of the facsimile advertisements.

41. In the event Lorco contends it had obtained prior express invitation or permission from the persons to whom the facsimile transmissions were sent, or had an established business relationship with those persons, the facsimile advertisements are nevertheless in violation of the TCPA as they did not contain a Compliant Opt Out Notice.

42. The Class Members are all persons, including natural persons and corporate entities, within the United States, to whom Defendants sent, or caused to be sent, facsimile advertisements promoting their business, at any time within four years prior to the filing of this suit, and at any time thereafter up to the date of the conclusion of this suit.

43. The Class consists of the Class Members described above.  The Class Members are identifiable by telephone records including detailed invoices and call detail records, fax transmittal records, and fax number databases used by Lorco or its agents, for the transmission of the advertisements via facsimile.

44. The potential class members number in the thousands and are so numerous that joinder of all of them is impracticable. Plaintiffs are members of the class.

45. Questions of law and fact common to Plaintiff and the proposed class include the following:

    a. Whether Lorco violated the TCPA and FCC promulgating regulations by engaging in illegal fax advertising.

    b. Whether Lorco violated the Maryland TCPA by engaging in illegal fax advertising.

    c. Whether the facsimiles sent by Lorco to class members constitute unsolicited advertisements;

    d. Whether Plaintiffs and the members of the class are entitled to statutory damages as a result of Lorco's actions.

46. Plaintiffs' claims are typical of the claims of the class.

47. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class, they will fairly and adequately protect the interests of the class, and they are represented by counsel skilled and experienced in class actions.

48. The actions of Lorco are generally applicable to the class as a whole and to Plaintiffs

49. Common questions of law and fact predominate over questions affecting only individual members of the class. This class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which is ascertainable from the transmission records.

50. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

51. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

52. There is no conflict of interest that would disqualify Plaintiffs as class representatives. Plaintiffs are capable of representing the other Class Members, and are willing to do so.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE TCPA

53. Plaintiffs incorporate the preceding allegations as if fully set forth in this count.

54. Lorco, directly or through its agents, negligently or willfully caused unsolicited facsimile advertisements to be sent to Plaintiff and to the facsimile machines of other Class Members, in violation of the TCPA and the FCC's promulgating regulations.

55. By causing unsolicited facsimile advertisements to be sent to the class, Lorco violated the privacy rights of Class Members.

56. Lorco's facsimile transmissions caused Plaintiffs and the Class Members to sustain property damage and costs by the consumption of paper and toner.

57. Lorco's facsimile transmissions interfered with the Class Members' use of their property by encumbering and occupying their facsimile machines.

58. By encumbering and occupying the Class Members' facsimile machines with its fax advertisements, Lorco interfered with the Class Members' normal business operations.

59. Lorco failed to provide Compliant Opt-Out Notice on its advertisements. Lorco failed to print on its advertisements the required notice clearly advising recipients of their right to

have the sender cease the transmission of such advertisements, identifying a functional, cost free mechanism for such requests, and advising that their failure to honor such requests is itself a violation of the TCPA.

60. Failure to provide a Compliant Opt-Out Notice on a facsimile advertisement is a separate and distinct violation of the TCPA.

61. The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of the TCPA.

## COUNT II: INJUNCTIVE RELIEF UNDER THE TCPA

62. Plaintiffs incorporate the preceding allegations as if fully set forth in this count.

63. The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

64. Plaintiffs, for themselves and the Class, respectfully petition the Court to order Lorco to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

## COUNT III: VIOLATION OF THE MARYLAND TCPA

65. Plaintiffs incorporate the preceding allegations as if fully set forth in this count.

66. Each plaintiff and class member is a "person" within the meaning of the Maryland TCPA and the Maryland Consumer Protection Act.

67. The conduct alleged in the Allegations of Fact and in Count I above also violated the Maryland TCPA.

68. Each "prohibited practice" under the Maryland TCPA is a separate violation.

**PRAYER FOR RELIEF**

WHEREFORE, on behalf of themselves and the other members of the class, Plaintiffs pray for the following relief:

1. That Lorco immediately be restrained from engaging in telemarketing that violates the TCPA.

2. That Lorco, its agents, and anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify the members of the class.

3. That this Court certify the claims of the named Plaintiffs and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.

4. That Plaintiffs and each of the Class Members be awarded $500 for each negligent violation, and $1,500 for each willful violation, of the TCPA by Lorco.

5. That Plaintiffs and the Class Members be awarded attorneys' fees and $500 for each violation of the Maryland TCPA by Lorco.

6. That the Court enter an appropriate order enjoining Lorco, its agents, or anyone acting on its behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer disks or computer programs, in its possession or control which can be used to identify all persons, corporations, or other entities to whom defendants have transmitted unsolicited facsimile advertisements.

7. Such other and further relief as is just and equitable under the circumstances.

## **PRESERVATION OF EVIDENCE DEMAND**

Lorco and its agents have custody and control of the business records and other information necessary to identify specifically the Class Members, including names and telephone facsimile numbers, transmission detail records and other data as alleged in paragraphs 28 and 29 in the Allegations of Fact, above.  Unless immediate injunctive relief is ordered, based on counsel's prior experience in similar lawsuits against the senders of unsolicited advertisements via facsimile, it is feared that Lorco, its agents or service providers, will alter, erase, delete, destroy or otherwise dispose of these records.  For this reason, Plaintiffs demand that Lorco, its agents, and anyone who has acted in concert with Lorco in connection with the events alleged above,  refrain from altering, deleting or destroying any of those items, including any documents or records which could be used to identify specifically the Class Members, and request that the Court so order.

## **JURY DEMAND**

**PLAINTIFFS REQUEST A JURY TRIAL AS TO ALL CLAIMS SO TRIABLE.**

PLAINTIFFS, MICHAEL PARROTTE AND AGV SPORTS GROUP, INC.

By their attorneys,


/s/ Stephen H. Ring
Stephen H. Ring (Bar No. 00405)
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 563-9249
Fax: (301) 563-9639
shr@ringlaw.us

Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 *facsimile*
ted@broderick-law.com
Subject to *Pro Hac Vice* admission

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mccue@massattorneys.net
Subject to *Pro Hac Vice* admission

Dated:  September 12, 2013