## UNITED STATES DISTRICT COURT FOR MARYLAND

MICHAEL PARROTTE, et. al.

       Plaintiffs

vs.

LIONETTI ASSOCIATES, L.L.C d/b/a LORCO
PETROLEUM SERVICES and LORCO, et al.

       Defendants

CIVIL NO.  13-2660

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs, Michael Parrotte and AGV Sports Group, Inc., move for class certification pursuant to Fed.R.Civ.P. 23(b)(2) and 23(b)(3), for a class defined as follows:

> All persons or entities within the United States to whom Defendants sent, or caused to be sent, facsimile advertisements promoting Defendants and their services, at any time after September 12, 2009.

Plaintiffs further request that the Court appoint Plaintiffs as the class representatives, and Stephen H. Ring, Matthew P. McCue and Edward A. Broderick as class counsel.

Plaintiffs file this motion early in these proceedings to avoid a possible "pick off" through a Rule 68 or individual settlement offer. *See e.g. Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). Plaintiffs respectfully request that this Court stay full briefing for both sides regarding this motion, and allow Plaintiff discovery to support a supplemental memorandum in support of this motion. Due to past experiences with the disappearance of critical fax transmission data in similar suits, Plaintiffs also request leave to pursue discovery immediately after service of summons on Defendants, and intend to file a separate motion to that effect.

For its initial support of this motion, Plaintiffs state:

1.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimile ("Junk Fax").  See 47 U.S.C. § 227.

2.      As the legislative history explained, because facsimile machines "are designed to accept, process, and print all messages which arrive over their dedicated lines," facsimile advertising imposes burdens on unwilling recipients that are distinct from the burdens imposed by other types of advertising. H.R. Rep. No. 317, 102d Cong., 1st Sess. 11 (1991). *See Missouri ex. rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004).

3.      Among other things, recipients of facsimile advertising must pay the expenses associated with receipt, including "the cost of the paper used, the cost associated with the use of the facsimile machine, and the costs associated with the time spent by the facsimile machine when receiving a facsimile advertisement during which the machine cannot be used by its owner to send or receive facsimile transmissions." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12405 (¶ 29) (1995); *see also Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 76 (3d Cir. 2011); *Am. Blast Fax*, 323 F.3d at 654-55.

4.      The TCPA provides for a private right of action in state courts for violations of the statute or the FCC's implementing regulations. 47 U.S.C. § 227(b)(3).  If a violation is established, Section 227(b)(3) entitles private litigants to recover the greater of actual monetary

losses or statutory damages of up to $500 (subject to trebling for a willful or knowing offense) for each violation of the statute. *Id.*

5.     In *Mims v. Arrow Financial Services,* 132 S.Ct. 740 (2012) the Supreme Court held that federal question jurisdiction exists under the TCPA.

6.     In enacting the TCPA, Congress and the Federal Communications Commission, ("FCC"), which interprets and enforces the TCPA, took steps to ensure that consumers could easily enforce the statute in an efficient manner.[1]

7.     The TCPA strictly regulates, but does not bar, advertisements via facsimile.  See 47 U.S.C. §227.  Advertisement via facsimile is lawful if (1) the "prior express permission" of the facsimile recipient has first been obtained, or (2) there is an "established business relationship" ("EBR") between the entity whose goods are being advertised, and the facsimile recipient. 47 U.S.C. §227 (a)(5); 47 U.S.C. §227 (b)(C).

8.     In 2005, the TCPA was amended and now mandates that advertisers include an "Opt Out Notice," on all Junk Faxes.  In order to comply with the Opt Out Notice requirements specifically set forth by Congress, each Junk Fax must include:

---

[1] *Hooters of Augusta, Inc. and Sam Nicholson v. American Global Ins. Co. and Zurich Ins.* 272 F.Supp.2d 1365 (S.D. Ga. July, 2003)(concluding after reviewing the TCPA's extensive legislative history that the TCPA is a remedial statute); *Western Rim Investment Advisors, Inc. et al. v. Gulf Insurance Co.,* 269 F.Supp.2d 836, 849-850 (N.D.TX. June, 2003) (TCPA is a remedial statute); Bernstein v. Am. Family Ins. Co., 2004 TCPA Rep. 1268 (Ill. Cir. Feb. 23, 2004) (concluding after reviewing the legislative findings relative to TCPA that the Congressional purpose in enacting the TCPA was remedial); *Shumacher Fin. Svcs., Inc. v. Sorkin's Directories, Inc.,* 2004 TCPA Rep. 1264 (Mo. Cir. 2004) (TCPA, like the Truth In Lending Act, is a remedial consumer protection statute that should be construed liberally in favor of the consumer); *Harjoe v. Prime TV, LLC,* 2004 TCPA Rep. 1278 (Mo. Cir. Jan 22, 2004) (TCPA as a remedial consumer protection statute should be construed liberally in favor of the consumer); *Jemiola v. XYZ Corp.,* 802 N.E.2d 745, 126 Ohio Misc.2d 168, 2003 TCPA Rep. 1252 (Ohio C.P. Dec. 11, 2003) (As a remedial law the TCPA should be liberally construed to protect the rights and interests of the plaintiff and the general public); *Harjoe v. Colonial Life & Accident Insurance Company,* 2002 TCPA Rep. 1065 (Mo. Cir. Aug 29, 2002) (concluding in a TCPA case that "remedial statutes should be liberally construed and interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers; *Schraut v. Rocky Mountain Reclamation,* 2001 TCPA Rep. 1182 (Mo. Cir. Dec. 18, 2001) (TCPA is a remedial consumer protection statute).

- Clear and conspicuous language on the first page of the unsolicited advertisement;

- That states that facsimile recipients may request that the sender not send any future unsolicited advertisements, and which;

- Specifically informs facsimile recipients that the *failure to comply with such a request, within thirty days, is unlawful.*

- The notice must also include **both** a toll free phone and facsimile number that a recipient may use to submit a request to cease transmitting unsolicited facsimile advertisements to the recipient.

<u>See</u> 47 U.S.C. §227(b)(C)(D); 47 CFR 64.1200(a)(3)(iii-v) (emphasis added). Failure to do so is an independent violation of the TCPA and precludes a defendant from asserting particular defenses. *See* 47 U.S.C. §227(b)(3) (setting forth private right of action for any violations of "this section"); 47 U.S.C. § 227(b)(1)(C)(i-iii) (EBR defense only applicable where Opt Out Notice has been provided to facsimile recipients); 47 CFR 64.1200(a)(3) (iii-v)(same).

9.      Furthermore, in enacting the TCPA, Congress and the FCC explicitly took steps to ensure that consumers could easily enforce the statute in an efficient manner. For example, under the TCPA and FCC regulations, a telemarketer who claims it had consent to send facsimile advertisements to a particular consumer bears the burden of proof, and must maintain records that prove such a claim. Any doubt as to who bears the burden of proof in this regard was removed by the Federal Communications Commission when it explicitly stated:

> To ensure that the EBR (Established Business Relationship) exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. The entity sending the fax is in the best position to have records kept in the usual course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records. We emphasize that we are not requiring any specific records be kept by facsimile senders. Should a question arise, however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.

*See Matter of Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006,* 21 F.C.C.R. 3787, 3793, ¶12 (April 6, 2006). Similarly, where

telemarketers claim they obtained "prior express consent" from consumers prior to the transmission of facsimile advertisements, the Federal Communications Commission has also noted:

> In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given.  We strongly suggest that senders take steps to promptly document that they received such permission.

*Id.* at ¶46.

10.     The TCPA also does not limit liability based on theories of agency or authority. The TCPA "is essentially a strict liability statute." *Park University Enterprises, Inc. v. American Cas. Co. of Reading, PA*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004), *aff'd* 442 F.2d 1239 (10th Cir. 2006). A party can be found liable under the TCPA for sending an unauthorized fax, even if that party believed, reasonably and in good faith, that the recipient wanted and had authorized receipt of the fax. *Id. See also Accounting Outsourcing, LLC, v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp. 2d 789, 818 (M.D. La. 2004) ("the TCPA ... impose[s] strict liability for [its] civil damages provisions.").

11.     Not surprisingly, given the scope of illegal telemarketing previously recognized by Congress in implementing the TCPA, the relatively small monetary recovery under the TCPA for each claim, and the simple elements to prove a TCPA violation, many consumers have sought to enforce their rights under the TCPA via class action.  Over the past two decades trial[2]

---

[2] State Trial Court Decisions
*Uesco v. Poolman*, 2011 TCPA Rep. 2156 (Ill. Cir. Ct. Aug. 10, 2011); *Windmill Nursing Pavillion, LTD. v. Res-Care Ill., Inc.*, 2011 TCPA Rep. 2112 (Ill. Cir. Ct. Mar. 18, 2011); *Ambassador Home Improvements, Inc. v. Hiqu Italian Am. Stone Corp.*, 2010 WL 5678598 (Pa. C.P. Dec. 29, 2010); *Anderson Office Supply, Inc. v. Adv. Med. Assocs., P.A.*, 2010 WL 6537289 (Kan.Dist. Ct.  Nov. 17, 2010); *Fla. First Fin. Group, Inc. v. Magnum Painting, Inc.*, 2010 TCPA Rep. 2046 (Fla. Cir. Oct. 21, 2010); C.E. Design LTD v. Matrix LS, Inc., 2010 TCPA Rep. 1974 (C. Ct. Ill 2010); *Brill v. Becktold Enters., Inc.*, 2009 TCPA Rep. 1856 (C. Ct. Ill. 2009) *Guy's World, Inc. v. Condon*, 2008 TCPA Rep. 1849 (Fla. Cir. Ct. (2008) *Joffe v. Acacia Nat'l Mtg. Corp.*, 2007 TCPA Rep. 1744 (Az. Cir. Ct. 2007); *Clean Carton Company, Inc. v. Prime TV, LLC*, Circuit Court of the County of St. Louis, Missouri (No. 01AC 11582 (July 13, 2004;  *Kaufman v. ACS Systems, Inc.*, Los Angeles Superior Court, Case No: BC222588

and appellate[3] courts nationwide have scrutinized and approved consumers' use of the class

action vehicle to combat illegal telemarketing.

      12.     In this action, Plaintiffs allege that Defendants sent unsolicited facsimile

advertisements in violation of the TCPA to Plaintiffs and to thousands of other recipients in

---

(April 5, 2004); *Philip Dubsky v. Advanced Cellular Communications, Inc.,* Ashtabula County Ohio Court of Common Pleas, No. 2003 CV 00652 (Ohio C.P. Feb 24, 2004); *William Bogot v. Olympic Funding, Chicago, Inc.,* Circuit Court of Cook County Illinois, No. 03 CH 11887 (Dec. 10, 2003) (Court grants class certification of TCPA claim); *ESI Ergonomic Solutions, LLC v. United Artist Theatre Circuit, Inc.,* Superior Court of Arizona Maricopa County, CV 1999-020649; 2003 TCPA Rep. 1086 (Ariz. Super. July 11, 2003); *J. Greg Coontz, et al. v. Nextel Communications, Inc., et al.,* State of Texas, District Court of Johnson County, Case No. C200100349; *Michael Penzer v. MSI Marketing, Inc.,* Miami-Dade Circuit Court, Case No. 01-30858 CA32; 2003 TCPA Rep. 1142 (Fla Cir. April 2, 2003); *Golden Seal Termite and Pest Control Company, et al. v. PrimeTV, L.L.C.,*State of Indiana, County of Marion, Cause No. 49C01-0112-CP-3010; *Jemiola v. XYZ Corporation,* Cuyahoga County, Ohio Court of Common Pleas, Case No. 411237 (December 21, 2001); *WPS, Inc. v. Lobel Financial, Inc.*, No 01CP402029, Court of Common Pleas, South Carolina); *Biggerstaff v. Ramada Inn-Coliseum*, Case No. 98-CP-10-4-4722 in the Charleston County Court of Common Pleas, South Carolina; *Biggerstaff v. Marriott International, Inc.,* 99-CP-10-001366, (Court of Common Pleas, South Carolina) (Feb 20, 2000); *Sam Nicholson v. Hooters of Augusta, Inc.,* Richmond County Georgia, Superior Court, CA No. 95-RCCV-616 (Aug. 26, 1998);

Federal Trial Court Decisions:

*Babb Real Estate, LLC v. Bennett,* 2011 TCPA Rep. 2146 (W.D. Wis. July 29, 2011); *Creative Montessori Learning Center v. Ashford Gear,* 2011 TCPA Rep. 2149 (N.D. Ill. July 27, 2011); Garo v. Global Credit & Collection Corp., 2011 TCPA Rep. 2087 (D. Az. 2011) *C.E. Design LTD v. King Architectural Metals, Inc.*, 2010 TCPA Rep. 2068, 2010 WL 5146641 (N.D. Ill. Dec. 13, 2010); *Garrett v. Ragle Dental Lab., Inc.* 2010 U.S. Dist. LEXIS 108339 (N.D. Ill, October 12, 2010);  *Ira Holtzman v. Gregory Turza,* 2009 WL 3334909 (N.D.Ill. Oct. 14, 2009); *CE Design v. Cy's Crabhouse North, Inc,* 259 F.R.D. 135 (N.D. Ill. July 27, 2009); *Green v. Service Master on Location Services,* 2009 WL 1810769 (N.D.Ill. June 22, 2009); *G.M. Sign v. Finish Thompson, Inc,*, 2009 WL 2581324 (N.D.Ill. Aug. 20, 2009); *CE Design v. Beaty Construction, Inc.*, 2009 TCPA Rep. 1855, 2099; 2009 WL 192481 (N.D. Ill. Jan. 26, 2009); *Robert Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802 (N.D.Ill.,2008); *Saf-T-Gard Intern., Inc. v. Wagener Equities, Inc.*, 2008 WL 2651309 (N.D.Ill. 2008); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D.Ill. 2008); *G.M. Sign, Inc. v. Franklin Bank, S.S.B*, 2008 WL 3889950 (N.D.Ill. 2008); *Hicks v. Client Servs., Inc.,* 2008 TCPA Rep. 1853 (S.D. Fla. 2008) *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642, (W.D.Wash., 2007); *Transp. Inst. v. Seattle PC-Magic, Inc.,* 2005 5267529 (Wash. Super. June 8, 2005); *Whitting Corp. v. Sungard Corbel, Inc.*, 2005 WL 5569575 (111. Cir. Nov. 9,2005); *Dubsky v. Advanced Cellular Comm.. Inc.,* 2004 WL 503757 (Ohio C.P. Feb 24,2004); *Penzer v. MSI Mktng., Inc., d/b/a Y2Marketinq*, 2003 WL 25548019 (Fla. Cir. Apr. 2,2003).

[3] Appellate court decisions relating to the enforcement of the TCPA via class action include:  *Jonathan Blitz v. Agean, Inc*., 677 S.E.2d 1 (North Carolina Court of Appeals, June 2, 2009); *American Home Services, Inc. v. A Fast Sign Company,* 287 Ga.App. 161, 651 S.E.2d 119 (2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.* --- So.2d ----, 2008 WL 2329929 (La.App. 1 Cir. 2008); *Lampkin v. GCH, Inc*., 146 P.3d 847 (2006); *Kaufman v. ACS Systems, Inc*., 2 Cal.Rptr.3d. 296 (Court of Appeal, Second District, Division 1, July 2003), review denied, 2003 Cal. LEXIS 7790; *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., et al.*, 203 Ariz. 94, 50 P.3d 844 (Ariz. App. 2002); *Hooters of Augusta, Inc. v. Nicholson, et. al.,* 245 Ga.App. 363, 537 S.E.2d 468 (2000).

Maryland and elsewhere throughout the United States, and that Defendants' facsimiles failed to contain a compliant opt-out notice. *See Class Action Complaint at* ¶¶ 12-14.

13.     Plaintiffs file this motion early in this suit to avoid the debate and delay that would likely arise from a possible "pick off" attempt via an offer of settlement directed to Plaintiffs only, and not the class. *See, Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011). Plaintiffs respectfully request that this Court stay full briefing on this motion for both sides, and allow Plaintiffs an opportunity to obtain discovery and then to file a supplemental memorandum in further support of this motion.

14.     This Court recently rejected the tactic of "picking off class members" to defeat class claims. *See Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 880 F.Supp.2d 689, 694 (D. Md. July 30, 2012) ("Jackson asserts that, because no certification motion is pending, the complete settlement offer mooted Kensington's individual claim and the case cannot proceed. Doc. No. 18 at 6. Absent controlling Fourth Circuit precedent on this question, the Court looks to other circuits for guidance. The Court finds persuasive holdings of courts that have employed the relation back doctrine to allow class action claims to go forward where no certification motion is pending and the plaintiff has received an offer of complete relief. *See Weiss v. Regal Collections,* 385 F.3d 337, 348 (3rd Cir.2004); *see also Clausen Law Firm, PLLC v. Nat'l Acad. of Contin. Legal Educ.,* 827 F.Supp.2d 1262, 1273 (W.D.Wash.2010); *White v. OSI Collection Servs., Inc.,* No. 01–CV–1343(ARR), 2001 WL 1590518, at *1 (E.D.N.Y.2001).").

15.     Other Maryland courts, including the Court of Appeals of Maryland, have also explicitly rejected a defendant's attempt to escape class action liability by making a token offer of settlement to a named plaintiff. *See Frazier v. Castle Ford, Ltd.*, --- A.3d ----, 2013 WL

265072, *5 (January 24, 2013 ("If all a defendant need do to defeat a class action is to satisfy the class representative's claim immediately after suit is filed, many meritorious class actions will never get off the ground. It will be particularly tempting to 'pick off' a putative class representative in cases where the underlying conduct affected many people but each claim, including the class representative's, is small or moderate in size—a type of case for which the class action procedure was devised.")

16.     However, the Plaintiff in this action is filing the instant Motion out of an abundance of caution.

17.     Numerosity.  Courts in this District have presumed that even a class size of 25 to 30 members raises the presumption that joinder would be impracticable, *In re Kirschner Medical Corp. Securities Litigation,* 139 F.R.D. 74, 78 (D.Md. 1991) *citing Dameron v. Sinai Hosp. of Baltimore,* 595 F.Supp 1404, 1408 (D.Md. 1984), *aff'd in part and rev'd in part* 815 F.2d 975 (4th Cir. 1987). *Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir. 1984) (certification of a class with 74 members deemed appropriate).  Here, numerosity is evident through the Defendants' apparent use of facsimile broadcast equipment, which is designed to contact a large number of individuals through automated, unmanned calling.  Furthermore, based upon the fact that the Junk Fax does not contain specific addressees, the Defendant likely initiated thousands of facsimiles to individuals and entities nationwide during the four years prior to the filing of this Complaint. Joinder is therefore impracticable and satisfy numerosity for certification purposes. *See Fed.R.Civ.P. 23(a)(1).*

18.     Common Questions Predominate.  Commonality exists where a question of law linking class members is substantially related to resolution of the litigation even where the individuals may not be identically situated. *American Finance System, Inc. v. Harlow,* 65 F.R.D.

94 (D. Md. 1974); *Fed.R.Civ.P. 23(a)(2) & 23(b)(3)*.  Common questions of law and fact almost

always exist where the claims of the class originate from the same wrongful acts or underlying

set of circumstances. *See Holsey v. Armour & Co.,* 743 F. 2d 199, 216-17 (4th Cir. 1984).  In

*General Telephone Co. v. Falcon,* 457 U.S. 147 (1982), the Supreme Court stated:

> The class device was designed 'as an exception to the usual rule that of the
> individual named parties only.' *Califano v. Yamasaki,* 442 US 682. Class relief is
> 'peculiarly appropriate when the issues involved are common to the class as a
> whole' and they turn on questions of law applicable in the same manner to each
> member of the class. *Id* at 701. For in such cases, the class device saves the
> resources of both the courts and the parties by permitting an issue potential
> affecting very class member to be litigated in an economical fashion under Rule
> 23.

The following questions are common to all members of the proposed class in this action:

1.  Did the Defendant's transmission of unsolicited facsimile advertisements to
    recipients nationwide violate the TCPA?

2.  Did the Defendant violate the TCPA when it transmitted facsimile advertisements
    that did not contain a complaint opt-out notice?

3.  Does the Defendant have any TCPA affirmative defenses to raise?

19.  <u>Typicality</u>.  The Plaintiff's claims are typical of the other class members, as all of

the claims are based upon a substantially identical set of facts and circumstances. *See*

*Fed.R.Civ.P. 23(a)(3)*.  In order for the typicality standard to be met, the claims of the named

plaintiffs must be consistent with those of the class, however, the claims need not be identical.

*Twyman v. Rockville Hous. Auth.,* 99 FRD 314, 321 (D. MD 1983).  Rather, a plaintiff's claims

are typical when the nature of the plaintiff's claims, judged from both a factual and a legal

perspective, are such that, in litigating his personal claims, he can reasonably be expected to

advance the interests of absent class members. *See General Telephone Co.* 457 U.S. at 156-157.

To put it another way, a plaintiff's claim is typical if it arises from the same events or practices

or course of conduct that gives rise to the claims of the other class members, and the named

plaintiff's claims are based on the same legal theory. *See Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 340 (4th Cir. 1998); *accord Deiter v. Mircrosoft Corp.,* 436 F.3d 461, 466-67 (4th Cir. 2006) (discussing the typicality requirement); *Smith v. Baltimore & Ohio R.R. Co.,* 473 F. Supp. 572, 581 (D. MD 1979).  In this case, the claims of the Plaintiff and the class all arise from the same unlawful facsimile campaign for which the Defendant is responsible.  The Plaintiff, like all class members, has sustained identical statutory damages.  The claims of the Plaintiff are "typical" and "similar" to all other class members as they arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and are based on the same legal theory as the members of the class.

20.    Adequacy.  As stated by the U.S. Supreme Court in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591:

> The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.

*Id.* at 625-26 (quoting *East Jex. Motor Freight System, Inc. v. Rodriquez,* 431 U.S. 395 at 403; *Schlesinger v. Reservists Comm. & Stop The War,* 418 U.S. 208, 216 (1974); *Fed.R.Civ.P. 23(a)(4).*  The same course of conduct by the Defendant that relates to the Plaintiff also relates to all class members.  The Plaintiff and every class member suffered the same injury and are entitled to the same statutory damages under the TCPA.  The Plaintiff's interests are co-extensive and not in conflict with those of the class members, there are no antagonistic or conflicting interests exist between the Plaintiff and the proposed class.  Indeed, the Plaintiff and the class members have suffered the same type of harm and share the same interests in establishing the wrongful nature of the Defendant's conduct.  The Plaintiff has also hired lawyers who are experienced in class action and consumer litigation.  Counsel has significant experience

litigating TCPA consumer class actions to provide the required level of representation, and has previously been appointed in Maryland courts as class counsel in TCPA cases.  *See e.g. Brey Corp t/a Hobby Works v. Life Time Pavers, Inc.,* Circuit Court for Montgomery County, Maryland, Civil Action No. 349410-V (2011).

21.  <u>Defendants' Actions Applicable Generally</u>.  The Defendants have acted or failed to act on grounds generally applicable to each class member, and it is these generalized actions around which this case revolves.  Defendants caused facsimile messages to be sent to each class member, from whom the Defendants did not have their prior express consent.  Class-wide Injunctive relief under the TCPA 47 U.S.C. §227(b)(3)(A), along with other corresponding relief is therefore appropriate. *See Fed.R.Civ.P. 23(b)(2).*

22.  <u>Superiority</u>.  It is desirable to have this case litigated as a class action because the class mechanism is superior to individual actions.  Plaintiff is not aware of any other cases alleging similar facts against this Defendant; likely because the other members of the class are not aware that their rights have been violated.  Further, a class action is necessary to determine that Defendants' conduct is a violation of law and to redress the class members' statutory damages. *See Fed.R.Civ.P. 23(b)(3).*

23.  Because the prerequisites of Fed.R.Civ.P. 23(b)(2) and 23(b)(3) are satisfied, this Court should certify the class.  Plaintiff requests that the Court set a briefing schedule for this motion sufficient to permit time for service of the complaint, discovery and the filing of a supplemental memorandum in support of this motion.

WHEREFORE, Plaintiffs respectfully request that this Court certify this case as a class action as to the class defined herein, and appoint Plaintiff as the class representative, and Stephen H. Ring, Matthew P. McCue and Edward A. Broderick as class counsel.

Plaintiff,
By its attorneys,

/s/ Stephen H. Ring
Stephen H. Ring (Bar No. 00405)
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 563-9249
Fax: (301) 563-9639
shr@ringlaw.us

Edward A. Broderick
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 *facsimile*
ted@broderick-law.com
Subject to *Pro Hac Vice* admission

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mccue@massattorneys.net
Subject to *Pro Hac Vice* admission