# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (NORTHERN DIVISION)

MICHAEL PARROTTE
3220 Rhoderick Road
Frederick, MD 21701

       Plaintiff

vs.

LIONETTI ASSOCIATES, L.L.C d/b/a LORCO
PETROLEUM SERVICES and LORCO
450 South Front Street
Elizabeth, NJ 07202

      and

LORCO OF MARYLAND, LLC
171 Childs Road
Elkton, Maryland 21921

   Serve:
      Dwight E. Thomey, Esquire, Agent
      153 East Main Street
      Elkton, Maryland 21921

      Defendants

CIVIL NO. 1:13-cv-02660-ELH

## FIRST AMENDED CLASS ACTION COMPLAINT

## INTRODUCTION

In 1991, Congress enacted the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "unrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." 47 U.S.C. § 227, Congressional Statement of Findings #5. Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited facsimile ("Junk Fax"). The Maryland TCPA,

Annotated Code of Maryland, Commercial Law Article, §§14-3201, -3202, creates a separate and

distinct cause of action ("In addition to any action . . . otherwise authorized by law") for the

transmission of certain unsolicited advertisements via facsimile.

Plaintiff, Michael Parrotte ("Parrotte" or "Plaintiff"), on behalf of himself and all others

similarly situated, sue Defendant Lionetti Associates, LLC doing business under the registered

trade names, "Lorco Petroleum Services" and "Lorco," and Defendant Lorco of Maryland, LLC,

for violation of the TCPA and the related Maryland statute.

## THE PARTIES

1.      Plaintiff, Michael Parrotte, is an individual residing in Frederick County,

Maryland.

2.      Defendant Lionetti Associates, L.L.C. ("Lionetti") is a New Jersey limited liability

company having its principal place of business in Elizabeth, New Jersey, and additional offices in

Elkton, Maryland.  Lionetti conducts business in Maryland under the trade names "Lorco

Petroleum Services" and "Lorco," which are registered with the Maryland Department of

Assessments and Taxation under "Lionetti Associates, LLC" as "Owner." Lionetti also operates

under the trade name Lorco Petroleum Services, as is reflected on its publicly available Certificate

of Liability Insurance that lists the insured as LIONETTI ASSOCIATES, LLC, LIONETTI

ASSOCIATES a/k/a LORCO PETROLEUM SERVICES.  See

http://www.lorcopetroleum.com/files/Lorco%20website%20insurance%20certificate%20Elizabet

h.pdf (last visited November 25, 2013).

3.      Defendant Lorco of Maryland, LLC ("Lorco LLC") is a Maryland limited liability

company maintaining its offices in Elkton, Maryland, engaged in business in Maryland, which

also operates under the trade name Lorco Petroleum Services, as is reflected on its publicly

available Certificate of Liability Insurance that lists the insured as Lorco of Maryland, LLC T/A

LORCO AND/OR LORCO PETROLEUM SERVICES.  See

http://www.lorcopetroleum.com/files/Lorco%20website%20insurance%20certificate.pdf (last

visited November 25, 2013).

## JURISDICTION AND VENUE

4.      Federal question subject matter jurisdiction exists under 28 U.S.C. § 1331. See

*Mims v. Arrow Financial Services, Inc*., 132 S.Ct. 740 (2012).

5.      Venue is proper under 28 U.S.C. § 1391(b) and (c) because a substantial portion of

the facts and circumstances that give rise to the cause of action occurred in Maryland.

## THE LEGAL BASIS OF THE CLASS CLAIMS

6.      This class action arises from Defendants' violation of federal and state statutes

prohibiting privacy and property violations via invasive telemarketing practices.

7.      The claims of Plaintiff and the putative class arise under the Telephone Consumer

Protection Act, 42 U.S.C. §227 ("TCPA"), and the Maryland TCPA (Annotated Code of

Maryland, Commercial Law Article, §§14-3201, -3202), both of which create private causes of

action for certain telemarketing practices.

8.      The TCPA and the Maryland TCPA were enacted to protect the property rights of

the recipients of unsolicited facsimile advertisements and to prohibit unreasonable invasions of

privacy via certain telemarketing practices.

9.      The TCPA prohibits the use of a facsimile machine to send unsolicited

advertisements for goods and services.  42 U.S.C. §227(b)(1)(C).

10.     The TCPA requires that even facsimile advertisements being sent to consumers

who consented to receipt, or with whom the advertiser had an established business relationship,

must include language on the facsimile which clearly informs the recipient that they may request

that future facsimiles cease, and that failure to remove the consumer's facsimile from the

telemarketer's database within thirty days is itself a violation of the TCPA.  These requisites are

referred to as "Compliant Opt Out Notice."  See 42 U.S.C. §227(b)(2)(D).

     11.    The TCPA, 47 U.S.C. §227(b)(3) provides a private right of action, as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a
> State, bring in an appropriate court of that State, (A) an action based on a violation
> of this subsection or the regulations prescribed under this subsection to enjoin such
> violation, (B) an action to recover for actual monetary loss from such a violation,
> or to receiver $500 in damages for each violation, whichever is greater, or (C) both
> such actions.

     12.    The Maryland Telephone Consumer Protection Act (Annotated Code of Maryland,

Commercial Law Article, §§14-3201, -3202) provides in relevant part as follows:

> § 14-3201. Violations of certain federal laws and regulations prohibited.
>
>  A person may not violate:
>
>  (1) The Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C.
> §§ 6101 through 6108, as implemented by the Federal Trade Commission in the
> Telemarketing Sales Rule (16 C.F.R. Part 310); or
>
>  (2) The Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by
> the Federal Communications Commission in the Restrictions on Telemarketing
> and Telephone Solicitations Rule (47 C.F.R. Part 64, Subpart L).
>
> § 14-3202. Violations; remedies.
>
> (a)  Violations.- A violation of this subtitle is an unfair or deceptive trade practice
> within the meaning of Title 13 of this article and is subject to the enforcement and
> penalty provisions contained in Title 13 of this article.
>
> (b)  Remedies.- In addition to the remedies provided in § 13-408 of this article, an
> individual who is affected by a violation of this subtitle may bring an action
> against a person that violates this subtitle to recover:
>
> > (1) Reasonable attorney's fees; and
> >
> > (2) Damages in the amount of the greater of:

(i) $500 for each violation; or

(ii) Actual damages sustained as a result of the violation.

(c)  Separate violations.- For purposes of this section, each prohibited telephone solicitation and each prohibited practice during a telephone solicitation is a separate violation.

"Title 13" referenced above, which is The Maryland Consumer Protection Act, provides at

§13-408, in relevant part:

Action for damages.

(a)  Actions authorized. -  In addition to any action by the Division or Attorney General authorized by this title and any other action otherwise authorized by law, any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title.

 (b)  Attorney's fees. -  Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the court may award, reasonable attorney's fees.

13.     Plaintiff and the class members are "persons" entitled to sue under 13-408(a) and

(b).

14.      The entity or entities on whose behalf facsimiles are transmitted are ultimately

liable for compliance with the rule banning unsolicited facsimile advertisements.  *Portuguese*

*Am. Leadership Council of the U.S., Inc. v. Investors' Alert, Inc.*, 956 A.2d 671, 680-81 (D.D.C.

2008); In the Matter of Rules and Regs. Implementing the Telephone Consumer Protection Act of

1991, 18 F.C.C.R. 14014 (2003); Memorandum Opinion and Order, Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991, FCC 95-310, CC Docket No. 92-

90.

15.     A defendant who relies on an existing business relationship as justification for the

transmission of an advertisement via facsimile has the burden of proving such an EBR.  21.

F.C.C.R. 3787, 21 FCC Rcd. 3787, 38 Communication Reg. (P&F) 167, 2006 WL 901720

(F.C.C.) Report and Order and Third Order on Reconsideration, CG Docket No. 05-338, FCC 06-

42, Adopted April 5, 2006.

16.    Plaintiff brings this action individually and as representatives of all members of a

nationwide class, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ALLEGATIONS OF FACT**

17.     On June 4, 2012, Defendants transmitted unsolicited facsimile advertisements to

Plaintiff and to thousands of other persons.  A copy of the advertisement sent to Plaintiff at the

fax number (301) 663-8950 on that date is attached as Exhibit A.  The header on Exhibit A

indicates that the fax was sent to "Michael" and was sent by Alfredo Silva, Sales.  Michael

Parrotte is the subscriber for the fax line (301) 663-8950.

18.    The advertisement in Exhibit A is of a type and style, including the one-page

length without cover sheet, the fax header, and the removal notice, that is consistent with fax

broadcasting to multiple recipients in an advertising "campaign."

19.    The notice at the bottom of Exhibit A, which is not a Compliant Opt-Out Notice,

states, "To be removed from our fax list, just call 888-260-5841."

20.    The reference in Exhibit A to "our fax list" is an admission by Defendants that the

advertisement was sent to multiple recipients whose facsimile numbers were included on a list of

facsimile numbers used by Defendants for the dissemination of the advertisement.

21.     The telephone number 888-260-5841is answered by Sound Advertising in Seattle,

Washington, which provides advertising services in "campaigns."

22.    The website of Sound Advertising  (at http://www.soundadgroup.com/#apps , last

viewed September 19, 2013) describes tools it uses to provide advertising services to its clients,

and includes the following statements: "If you've ever wondered what the leadgen pros are using, this is it. Leadmesh was developed to help lead aggregators, buyers and sellers of leads increase their profitability.  Ping Post logo.  Host and Post – buy and sell real-time leads. Plan your campaigns."

23.     "Leadgen" means "lead generation," which is the process of identifying qualified prospective customers using the mass dissemination of advertisements that invite customers to respond, typically by telephone.

24.     Defendants engaged in lead generation through the use of one or more advertising services that disseminated Defendants' advertisements via fax broadcast.  Typically, fax broadcasts in an advertising campaign of this type are sent on more than one day.  Exhibit A displays one of those advertisements, sent on one of the dates in this advertising process.

25.     On information and belief, Plaintiff allege that Defendants and their agents, including their advertising service providers, have possession or control of copies of all of the advertisements promoting Defendants' business that were disseminated to Plaintiff and the class members, as well as the lists themselves, and the detailed outcome data that resulted from the transmissions.  It would be ordinarily expected that this data was created and preserved.

26.     The specific time, date, duration, target facsimile number, sending number, and content of each fax transmission is exclusively in the possession or control of Defendants, their agents, their advertising service providers, and to some extent, their telephone carriers.  Plaintiff can further particularize his allegations as to this information when it is produced in discovery.

27.     Neither Plaintiff nor the class members gave express prior invitation or permission, or prior consent in any fashion, for the transmission of Defendants' advertisement to them via facsimile.

28.     The advertisements did not contain a Compliant Opt Out Notice.

29.     Defendants carelessly and recklessly failed to obtain prior consent from the persons to whom the faxes were sent; carelessly and recklessly failed to determine that the faxes were sent only to persons who had given such prior consent; and carelessly and recklessly failed to include a Compliant Opt-Out Notice in the content of the faxes.

30.     The Federal Communications Commission has ruled, ". . . the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission.

31.     Exhibit A and similar faxes were sent on behalf of both Lorco LLC and Lionetti, and were designed to offer the goods and services of both as they promote the common trade name of Lorco Petroleum Services.  The fax header on Exhibit A lists Alfredo Silva, Jr. as the sender of the fax.  Mr. Silva's LinkedIn page lists his former employment at "Lorco Petroleum" and provides the following description of his job duties:

> Duties involved procuring contracts for waste oil recycling. Hired specifically because of environmental experience; ability to secure contracts and expand sales volume. Specific targets were to solicit car dealerships, lube centers, auto repair shops; to secure the rights to remove waste oil for recycling purposes; also to seek out and secure contracts for UST VAC jobs, tank cleanings, sludge removal and the general cleaning of oil/water separators in auto dealerships. Also included was to up-sell LORCO products i.e. parts washers, poly tanks, bulk quantities of antifreeze and windshield wash. Main objective was to expand LORCO's footprint throughout DE, MD, DC, and VA.

http://www.linkedin.com/pub/alfredo-silva-jr/5a/44b/75  (last visited November 25, 2013).

32.     Mr. Silva's online LinkedIn resume makes clear that his marketing was not limited to Maryland, and hence not only to promoting the goods and services of Lorco LLC, but also of Lionetti, which operates in multiple states.

33.     That Lorco LLC and Lionetti are both promoted by the fax campaign at issue because Lorco LLC and Lionetti both operate under the common trade name Lorco Petroleum Services, whose services were being promoted in the fax campaign.  Moreover, Lionetti has specifically authorized Lorco LLC to use the trade name Lorco Petroleum Services.

34.     Apart from the straightforward imposition of liability under the TCPA for illegal faxing promoting the goods or services of both defendants, as well as a marketing campaign that authorizes the use of the common trade name, liability for the fax campaign should be imposed on both corporations to prevent fraud and/or enforce a paramount equity as both defendants operate pursuant to a common marketing scheme and share a common trade name.

## CLASS ALLEGATIONS

35.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States.

36.     On June 4, 2012, and on other dates during the four years prior to the filing of this action, Defendants transmitted unsolicited facsimile advertisements to class members.

37.     Defendants have engaged in widespread advertising via unsolicited facsimile transmission in violation of the TCPA and the Maryland TCPA.

38.     Defendants did not obtain the consent of Plaintiff or the putative class members prior to the transmission of the facsimile advertisements.

39.     In the event Lorco contends it had obtained prior express invitation or permission from the persons to whom the facsimile transmissions were sent, or had an established business relationship with those persons, the facsimile advertisements are nevertheless in violation of the TCPA as they did not contain the Compliant Opt Out Notice required by law.

40.     The class of persons represented by Plaintiff consists of all persons, including natural persons and corporate entities, within the United States to whom Defendants sent, or caused to be sent, facsimile advertisements promoting their business, at any time within four years prior to the filing of this suit.

41.     The class as defined above is identifiable by telephone records including detailed invoices and call detail records, fax transmittal records, and fax number databases, used by Lorco or its agents, in transmitting its unsolicited facsimile advertisements.

42.     The potential class members number in the thousands and are so numerous that joinder of all of them is impracticable.  Plaintiff are members of the class.

43.     Questions of law and fact common to Plaintiff and the proposed class (and which are susceptible to commons answers) include the following:

a.   Whether Lorco violated the TCPA and FCC promulgating regulations by engaging in illegal fax advertising.

b.    Whether Lorco violated the Maryland TCPA by engaging in illegal fax advertising.

c.   Whether the facsimiles sent by Lorco to class members constitute unsolicited advertisements;

d.   Whether Plaintiff and the members of the class are entitled to statutory damages as a result of Lorco's actions.

44.     Plaintiff's claims are typical of the claims of the class.

45.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions.

46.     The actions of Lorco are generally applicable to the class as a whole and to Plaintiff.

47.     Common questions of law and fact predominate over questions affecting only individual members of the class.  This class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which is ascertainable from the transmission records.

48.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

49.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

50.     Plaintiff is capable of representing the other members of the class, and are willing to do so.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE TCPA

51.     Plaintiff incorporates the preceding allegations above as if fully set forth in this count.

52.     Lorco, either directly or by its agents, negligently or willfully caused unsolicited facsimile advertisements to be sent to Plaintiff and to the facsimile machines of other members of the class, in violation of the TCPA and the FCC's promulgating regulations.

53.     By causing unsolicited facsimile advertisements to be sent to the class, Lorco violated the privacy rights of class members.

54.     By causing unsolicited facsimile advertisements to be sent to the class, Lorco caused class members to sustain property damage and costs by the consumption of paper and toner.

55.     By causing unsolicited facsimile advertisements to be sent to the class, Lorco interfered with the class members' use of their property as their facsimile machines were encumbered by the transmission of Lorco's unsolicited facsimile advertisements.

56.     By causing unsolicited facsimile advertisements to be sent to the class, Lorco caused the class members' facsimile machines to be encumbered, thus interfering with normal business operations.

57.     Lorco failed to provide Compliant Opt-Out Notice on its advertisements.  Lorco failed to print on its advertisements notice advising recipients of their right to cease receiving such advertisements, and identifying a functional, cost free mechanism for such requests.

58.     Failure to provide opt out notice on a facsimile advertisement is a separate and distinct violation of the TCPA.

59.     The TCPA provides for statutory damages in the amount of a minimum of $500 for each separate violation of the TCPA.

## COUNT II: INJUNCTIVE RELIEF UNDER THE TCPA

60.     The allegations from all previous paragraphs are incorporated by reference as if fully set forth herein.

61.     The TCPA expressly authorizes injunctive relief to prevent future violations of the Act.

62.     Plaintiff, for himself and the Class, respectfully petition the Court to order Lorco to immediately cease engaging in unsolicited facsimile advertising in violation of the TCPA.

## COUNT III: VIOLATION OF THE MARYLAND TCPA

63.     The allegations from all previous paragraphs are incorporated by reference as if fully set forth in this count.

64.     Each plaintiff and class member is a "person" within the meaning of the Maryland TCPA and the Maryland Consumer Protection Act.

65.     The conduct alleged in Count I above also violated the Maryland TCPA.

66.     Each "prohibited practice" under the Maryland TCPA is a separate violation.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of himself and the other members of the class, Plaintiff pray for the following relief:

1.     That Lorco immediately be restrained from engaging in telemarketing that violates the TCPA.

2.     That Lorco, its agents, and anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify the members of the class.

3.     That this Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims as provided by Rule 23 of the Federal Rules of Civil Procedure.

4.     That the named Plaintiff and the other members of the class action so certified be awarded $500 for each negligent violation of the TCPA by Lorco or $1,500 for each willful violation of the TCPA.

5.     That the named Plaintiff and the other members of the class action so certified be awarded attorneys' fees and $500 for each violation of the Maryland TCPA by Lorco.

13

6.      That the Court enter an appropriate order enjoining Lorco, its agents, or anyone acting on its behalf, from altering, erasing, changing, deleting, destroying or otherwise disposing of any records, including computer disks or computer programs, in its possession or control which can be used to identify all persons, corporations, or other entities to whom defendants have transmitted unsolicited facsimile advertisements.

7.      Such other and further relief as is just and equitable under the circumstances.

## PRESERVATION OF EVIDENCE DEMAND

Defendants or their agents have custody and control of the business records and other information necessary to identify the members of the class including names and telephone facsimile numbers.  Unless immediate injunctive relief is ordered, it is feared that Defendants or their agents, will alter, erase, delete, destroy or otherwise dispose of the records in their possession which are necessary to identify each recipient of the unsolicited facsimile advertisements being sent by Defendants.  For this reason, the Plaintiff demands that Defendants, their agents, or anyone acting on their behalf, refrain from altering, deleting or destroying any documents or records which could be used to identify the members of the class.

## JURY DEMAND

**PLAINTIFF REQUESTS A JURY TRIAL AS TO ALL CLAIMS SO TRIABLE.**

PLAINTIFF, MICHAEL PARROTTE


/s/ Stephen H. Ring
Stephen H. Ring (Bar No. 00405)
STEPHEN H. RING, P.C.
506 Main Street, Suite 215
Gaithersburg, MD 20878
Phone: (301) 563-9249
Fax: (301) 563-9639
shr@ringlaw.us

Edward A. Broderick
Anthony I. Paronich
Broderick Law, P.C.
125 Summer Street, Suite 1030
Boston, MA 02110
(617) 738-7080
(617) 951-3954 *facsimile*
ted@broderick-law.com
Subject to *Pro Hac Vice* admission

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Third Floor
Natick, MA 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mccue@massattorneys.net
Subject to *Pro Hac Vice* admission


Dated: November 25, 2013